IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COREY H., LATRICIA H., ANDREW B., and JASON E., by their parents and next friends, SHIRLEY P., BEVERLY HL, SHARON B., and STEPHEN E., on behalf of a class of similarly situated persons, ) ) ) ) ) ) | |
| Plaintiff, ) | |
| ) | No. 92 C 3409 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, and THE ILLINOIS STATE BOARD OF EDUCATION, ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER DENYING CHICAGO BOARD'S OBJECTION TO AN APPEAL OF THE ISBE'S 10TH DISTRICT-WIDE FINDINGS**

This litigation began 19 years ago, when plaintiffs filed a class action complaint on behalf of children with disabilities in the Chicago public school system, claiming in essence that defendant Board of Education of the City of Chicago ("Chicago Public Schools" or "CPS") segregated pupils with disabilities who were entitled to special education, and provided them with inferior educational programs in violation of the Individuals with Disabilities Education Act. 20 U.S.C. §1414, et seq. ("IDEA"). In February 1993, Judge Leinenweber, to whom this case had originally been assigned, certified a class defined as all children who are enrolled in the Chicago Public Schools and are or will be classified by CPS as having a disability.

Shortly thereafter, the parties, including CPS and defendant Illinois State Board of Education ("ISBE"), retained a panel of three experts to shape a settlement to correct the IDEA violations that were apparent in the CPS system. When that effort failed in 1995, shortly after the undersigned judge was appointed to the bench and was assigned this case, CPS wisely

negotiated a Settlement Agreement, which was approved by the court at a fairness hearing in January 1998. ISBE, however, decided to litigate its responsibility to educate children with disabilities in Chicago in the least restrictive environment ("LRE"), as required by the IDEA. That effort failed when this court, after a trial on the issue of liability, ruled against ISBE in February 1998. See Corey H. v. Board of Education, 995 F. Supp. 900 (N.D. Ill. 1998).

After further proceedings concerning the appropriate remedy against ISBE, that agency, like CPS before it, negotiated a Settlement Agreement that was approved by the court at a fairness hearing in November 1998. Both the CPS and ISBE Settlement Agreements required the development of complex implementation plans, and also provided that the court appoint a Monitor to oversee the challenging obligations required by the respective Settlement Agreements and implementation plans. The original Monitor appointed by the court was the Honorable Joseph Schneider who, along with his able staff, served admirably until his retirement in 2003. The court then appointed Kathleen Yannias as Judge Schneider's successor, and she has served in that capacity for the past approximately eight years.

Over the years, certain modifications and refinements have been made in connection with the Settlement Agreements. These have generally been developed by the Monitor and approved by the court, due to the complexity, scale and importance of the reforms agreed to by the parties. These modifications included specifically defined "Benchmarks" to be met by CPS and monitored by ISBE, which was required to issue annual District-Wide Findings ("DWFs") measuring compliance with certain indicators identified in the ISBE Settlement Agreement as well as the later-established Benchmarks, based on a sample of schools examined by ISBE monitoring personnel.

Naturally, in an enterprise of this size and importance, many disagreements arose over the course of the post-settlement years, ranging from the development of the Benchmarks themselves, to the methods employed by the Monitor and ISBE in monitoring and reporting on the progress (or lack of progress) by CPS in fulfilling its obligations under its Settlement Agreements and the IDEA, to various extensions of the Settlement Agreements. Both Settlement Agreements provided that disputes first be brought to the Monitor for resolution, and then to the court if necessary. Many such disputes have been resolved amicably, many others by the Monitor without the court's involvement, and still others after appeal to the court from decisions by the Monitor.

In late 2010, at the court's urging, the parties negotiated and reached agreement to bring this litigation to a conclusion. Pursuant to the court's orders of November 18, and November 29, 2010 (Doc. Nos. 728, 730, 773, 734), the ISBE's Settlement Agreement will expire on August 1, 2011, and CPS's Settlement Agreement will expire on September 1, 2012. After the terminations of the respective Settlement Agreements, the Monitor will prepare reports on the level of compliance for each of the defendants. The parties may then file objections to the Monitor's final report, and the court will rule on any such objections after briefing by the parties. The court anticipates that by mid-2013, this litigation will finally will come to what all parties concerned hope is a successful conclusion.

This opinion addresses CPS's objection to ISBE's 10th District-Wide Findings that were issued on January 4, 2011.[1] This follows CPS's objections to several other District-Wide

---

[1] CPS has also requested that its objections to the 10th District-Wide Findings be applied to the 11th District-Wide Findings, which are scheduled to be released later this month.

Findings, the latest being to ISBE's 9th District-Wide Findings, which objections were denied by this court on June 2, 2011. CPS's latest objections repeat many of its past (rejected) positions, and appear to represent a preemptive attempt to temper the impact of the Monitor's final report on CPS's performance of its obligations under its Settlement Agreement, rather than a serious attack on the 10th District-Wide Findings.

Indeed, in its reply, CPS acknowledges that its principal arguments are repetitive of objections that it has advanced, and have been rejected, in its previous objections to ISBE District-Wide Findings. Claiming that ISBE and the Monitor are biased against CPS and select the schools on which the DWFs have been based in a manner that will result in findings of noncompliance, CPS suggests that to "right the wrong that has been perpetrated against [CPS] for the past decade" the court should revisit and reverse its prior decisions rejecting CPS objections. CPS further requests that the court:

> should order the renaming of the [DWFs] as ISBE's [insert applicable year, such as "Tenth"] Summary of Monitoring Done Pursuant to its Corey H. obligations" Correspondingly, the specific findings in the reports would be renamed to accurately reflect how they were calculated and what they truly represent. . . . [They] would be labeled to represent specified findings as to "Schools Subjected to Full Two - Year Visits With Less than 80% compliance Rate on the Probes Concerning [insert finding . . .].

This somewhat radical request is rejected. The ISBE District-Wide Findings describe in detail which schools were monitored, how they were monitored, and the resultant findings. They do not profess to be a report on every school and do not suggest that great progress has not been achieved in many CPS schools. The court fails to see how the nomenclature of the DWFs could result in an "unconscionable . . . travesty of justice," as CPS stridulously claims. As this court held in its 1999 ruling, ISBE, as the Illinois State Educational Agency, is "responsible for

assuring that the requirements of the [IDEA] are carried out" to ensure that all children with disabilities are educated in the least restrictive environment. Corey H., 995 F. Supp. at 904 (citing 20 U.S.C. § 1412(5), (6)). The court has consistently approved the methodology and manner employed by ISBE with respect to the DWFs for the past ten years. CPS's latest objections, portraying it as a victim of a purported decade-long design by ISBE and the Monitor, aided by plaintiffs' counsel and indeed this court, to cast a negative light on CPS's efforts to reform its special education programs, are misplaced and unconvincing.

Turning to the merits of the objections, CPS first complains that the 285 schools that ISBE has monitored for many years are not "representative of the district as a whole" because they do not include "better performing schools." As plaintiffs, ISBE and the Monitor point out in their responses, this objection is untimely and has been rejected repeatedly by the court, which finds no reason to alter its earlier rulings.

Similarly, CPS's objection to ISBE's decision not to include schools that were not evaluated in its calculations of compliance was specifically rejected in this court's June 2, 2011, order. The court finds no reason to revisit that decision, and no error in ISBE's method of determining compliance as of the date the monitoring visit occurred rather than at some later date at which CPS claims the school had become compliant.

CPS also complains that ISBE's methods supporting its DWFs are subjective and incomprehensible, and cites a number of examples in an attempt to make its point. Again, these complaints are untimely and repetitive of previous objections that have been rejected by the Monitor and the court. As the Monitor points out, to the extent CPS required further guidance regarding ISBE's methodology, and could not get a satisfactory response from ISBE, CPS was

instructed to contact the Monitor to facilitate a resolution. Yet, the Monitor reports that "[n]o such contact was made." This objection thus appears to be another attempt to make a record for some future dispute in this or some hypothetical future litigation. In any event, after reviewing the parties' and the Monitor's briefs regarding this objection, the court adopts in full the Monitor's recommendations and reasoning. (Doc. No. 773, pp. 7-13.)

Finally, CPS's objections to ISBE's finding of procedural failures is without merit. As explained by the Monitor (Doc. 773, pp. 13-14), procedural safeguards such as lack of required parental consents for placements, notification to parents and the like are serious matters that are properly included in DWFs. As also noted by the Monitor, similar objections were rejected with respect to the 5th District-Wide Findings in 2006, and CPS's complaint that the evaluation of 70 schools was insufficient is wholly inconsistent with CPS's support (confirmed by the court over plaintiffs' strong objection) of a "40 school approach" for the 8th District-Wide Findings.

One final matter requires mention in this opinion. In support of its objection to the sampling method employed by ISBE in connection with the 10th (and 11th) District-Wide Findings, CPS has filed a "Statistical Report" prepared by David B. Blanchflower. Plaintiffs claim that the proffer of such expert testimony at this late stage in the proceedings came as a surprise, especially since the court (and presumably the parties) had no notice that CPS had retained a new expert to offer an opinion about statistical sampling methods. For the reasons expressed above, Dr. Blanchflower's opinions are irrelevant to this court's decision with respect to CPS's objections to the 10th District-Wide Findings. What is most disturbing to plaintiffs about Dr. Blanchflower's report, however, is his conclusion that ISBE should have included in its sample more schools with a lower percentage of African-American students because those

6

schools were likely to have experienced fewer violations of CPS's obligations under its Settlement Agreement.  Plaintiffs claim that this suggests that schools with predominately black populations were likely to experience greater violations than schools with predominately white populations, thus injecting a disturbing notion of potential racial discrimination in the provision of special education services within CPS.

In its reply in support of its objections to the Tenth District-Wide Findings, CPS strongly denies any notion of racial discrimination in Dr. Branchflower's report or otherwise, arguing that the report in its entirety supports its position that ISBE's sample of CPS schools is unrepresentative of the district as a whole.  Plaintiffs disclaim any past accusation of racial discrimination in connection with this case, and suggest that they might seek further discovery now that Dr. Blanchflower has raised the issue.  The court regards this dispute as an immaterial distraction, especially given the current schedule to bring this case to a close, and will deny any request to take such discovery.

Because of that schedule, it is imperative that the parties work towards completing their assigned tasks by the expiration of the respective Settlement Agreements governing ISBE and CPS.  Further posturing, personal attacks on opposing counsel, and needless objections and litigation will not fulfill the intention of the court, the Monitor, and the parties themselves, to bring this case to as successful a conclusion as possible as outlined in the schedules and orders by the court.

CPS's objections to the 10th District-Wide Findings are denied.  ISBE is directed to issue its 11th District-Wide Findings forthwith.

**ENTER:** July 14, 2011

_____
**Robert W. Gettleman**
**United States District Judge**