IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COREY H., LATRICIA H., ANDREW B., and JASON E., by their parents and next friends, SHIRLEY P., BEVERLY HL, SHARON B., and STEPHEN E., on behalf of a class of similarly situated persons, ) ) ) ) ) ) | |
| Plaintiff, ) | |
| ) | No. 92 C 3409 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, and THE ILLINOIS STATE BOARD OF EDUCATION, ) ) ) ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER DENYING CPS' SECOND MOTION TO VACATE WITHOUT PREJUDICE**

In March 2012, defendant the Board of Education of the City of Chicago ("Chicago Public Schools" or "CPS"),[1] filed two motions to vacate. The "first" motion to vacate (Doc. 812) was based on CPS's contention that the class of children with disabilities that had been certified by Judge Leinenweber in 1992 should be decertified based primarily on the recent Seventh Circuit decision in <u>Jamie S. . Milwaukee Public Schools</u>, 668 F.3d 481 (7th Cir. 2012). The court denied that motion in a memorandum opinion and order dated July 19, 2012 (Doc. 886), and the matter is currently pending in the court of appeals.

CPS's "second" motion to vacate (Doc. 852) was based on what it termed "substantial compliance" with its Consent Decree. The court honored CPS's request to deal with the "first" motion to vacate before setting a final briefing schedule on the "second" motion. Thereafter, in

---

[1] All terms of art used herein are those adopted in the court's memorandum opinion and order dated July 19, 2012, denying CPS's "first" motion to vacate (Doc. 886).

June 2012 CPS supplemented its second motion to vacate, and plaintiffs filed a responsive brief on August 27, 2012. CPS's reply brief was filed on September 17, 2012.

At the time CPS filed its two motions to vacate, pursuant to the Extension Agreement entered into by the parties and approved by the court (Doc. 728), the CPS Consent Decree was set to expire in less than six months. Under the Extension Agreement, the parties agreed that the Monitor would issue a report on compliance by CPS with its Consent Decree obligations after the Decree expired on September 1, 2012, the parties would respond to the report, and the court would issue appropriate rulings with respect to the report and the objections. CPS's second motion to vacate, based on alleged substantial compliance with those very Consent Decree obligations, thus struck the court as a costly and needless exercise in light of the imminent expiration of the Consent Decree and the issuance of a Monitor's report that would cover the very subject of compliance. The extended briefing schedule required to rule on the second motion to vacate made it virtually certain that before briefing was complete the CPS Consent Decree would have expired. This is exactly what has occurred.

In its reply brief in support of its second motion to vacate, CPS was forced to confront this reality, and explained that it filed the second motion to vacate because, it contends, it was afraid that the court would double-cross the parties and extend the CPS Consent Decree beyond the date that all parties and the court had agreed it would finally expire. According to CPS, "At best, the [Extension Agreement] was ambiguous as to what would occur after September 1, 2012. Given the history of extensions of the Consent Decree and the reference in the [Extension Agreement] to `before the Court dismisses this case,' it was reasonable for the Board to bring its motion to vacate based on substantial compliance in March 2012, especially since `compliance

issues' were to be addressed in the Monitor's final report in any event." Consequently, CPS "suggests that ruling on this [second] motion [to vacate] be deferred pending the Seventh Circuit's ruling on [CPS's] appeal of this court's order denying its motion to vacate the Consent Decree for lack of subject matter jurisdiction. If the Seventh Circuit confirms this court's decision denying the [CPS's] motion to vacate the Consent Decree on subject matter jurisdiction grounds, the substantial compliance motion to vacate can be taken up in conjunction with the Court Monitor's final report."

First, the suggestion that this court would extend the CPS Consent Decree beyond September 1, 2012, is disrespectful, unsupported by anything the court has ever said or done, and totally without merit. In fact, this court made clear on many occasions that it had determined that the Corey H. case would come to a final conclusion on September 1, 2012, with the termination of the Consent Decree, followed by what all parties agreed would be a report by the Monitor on compliance. To suggest that this court would renege on that commitment, and to bolster that suggestion with the assertion that prior extensions of the Consent Decree had been ordered by the court without proper notice to CPS or an opportunity to be heard (nothing could be further from the truth) is equally unsupportable and inappropriate. Perhaps CPS's second motion was authored by CPS's new outside counsel, who were not involved in the case over the past 14 years that the Consent Decree has been in effect, and perhaps those same lawyers did not take the trouble to consult the record about the course of proceedings leading to the earlier

3

extensions of the Consent Decree – extensions that were not ordered without having given all parties full opportunity to weigh in.[2]

Second, CPS's acknowledgment in its reply brief that its second motion to vacate raises the identical issues that will be addressed in the Monitor's final report constitutes an admission that its second motion to vacate based on substantial compliance is moot. Put simply, there is no longer a Consent Decree to vacate. It has expired, and the only remaining obligation of CPS is that which is contained in the Extension Agreement to cooperate with the Monitor in issuing her final report and, if it wishes, responding to that report. Any orders by the court in connection with that report by the Monitor will have no injunctive effect, and CPS is currently under no obligation whatever to comply, substantially or not, with any of the obligations it assumed under the expired Consent Decree.

There are many other reasons to deny CPS's second motion to vacate, including timeliness, waiver, and the merits themselves. The court needn't reach those issues because the motion is moot. For this reason, the court denies CPS's second motion to vacate without

---

[2]The CPS Settlement Agreement was approved on January 16, 1998, and by its terms was to expire on January 16, 2006. Paragraph 89 of the Settlement Agreement allowed modification on motion by any party. On July 10, 2005, the Monitor issued a report suggesting an extension (Doc. 328). CPS objected (Doc. 337) and on December 21, 2005, the court extended the Agreement until further order (Doc. 362). On January 18, 2007, plaintiffs appealed the Monitor's request to set a final extension date of September 1, 2010. CPS responded to that appeal (Doc. 467). After two hearings the court extended the CPS Settlement Agreement until September 1, 2010 (Docs. 487, 488). All further extensions were by agreement of all parties (Docs. 710, 714, 721, 728, 730).

4

prejudice to CPS's ability to respond to the Monitor's report, as it agreed to do in the Extension Agreement.

**ENTER:** October 29, 2012

_____
**Robert W. Gettleman**
**United States District Judge**