IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COREY H., LATRICIA H., ANDREW B., and JASON E., by their parents and next friends, SHIRLEY P., BEVERLY H, SHARON B., and STEPHEN E., on behalf of a class of similarly situated persons, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| | ) No. 92 C 3409 |
| v. | ) ) Judge Robert W. Gettleman |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, and THE ILLINOIS STATE BOARD OF EDUCATION, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION REGARDING THE COURT MONITOR'S FINAL REPORT ON THE BOARD OF EDUCATION OF THE CITY OF CHICAGO'S COMPLIANCE WITH ITS CONSENT DECREE**

Pursuant to an agreement by the parties to bring this 21 year-old litigation to a close: (a) CPS's Consent Decree terminated on September 1, 2012; (b) the court-appointed Monitor, Kathleen Yannias, issued her final report[1] on compliance by the Board of Education of the City of Chicago ("Chicago Public Schools" or "CPS") (Doc. 945); (c) plaintiffs and CPS responded to that report (Docs. 955, 957); and (d) plaintiffs and the Monitor filed replies (Docs. 959, 961).

A similar process applied to the termination of obligations by the Illinois State Board of Education ("ISBE") under its Consent Decree that ended in August 2011. After the Monitor issued her final report on ISBE compliance and the parties filed responses, the court found that those filings were "sufficient to fully inform the public and the certified class, including past and present children with disabilities in the Chicago Public Schools and the parents and guardians of

---

[1] The Monitor's report consisted of 131 pages, along with 23 exhibits.

those children, of the position of the court Monitor and the parties with respect to ISBE's performance of its responsibilities under the Consent Decree. Particularly in light of ISBE's concurrence with the Monitor's final report, the court sees no reason to rule on the correctness of any of the positions taken by the Monitor, plaintiffs or CPS itself." (Order of Oct. 29, 2012, Doc. 931, p.2). Likewise, with respect to the Monitor's report on CPS's compliance, the court finds that the Monitor's and the parties' positions[2] are clearly articulated and, because the case is closed, there is no need for the court to resolve the many disagreements identified in the responses and replies.

That being said, the court finds that certain positions taken by CPS deserve comment. First, CPS's response ends with a nonsensical request that, "Because [CPS] is in substantial compliance with its Consent Decree obligations, this case should be dismissed with prejudice." As CPS's counsel well know, the court has rejected CPS's many requests to find that it has "substantially complied" with the Consent Decree. (See e.g., Docs. 885, 929). In any event, despite language in several agreed orders referring to dismissal, there is nothing left in this case to "dismiss" – with or without prejudice. As this court has reminded CPS previously,[3] the Monitor's post-Decree report and the responses thereto were, as agreed by the parties, "for informational purposes" only. Like CPS's misguided motions to vacate the Consent Decree based on alleged and unproven "substantial compliance" and to decertify the class (which this

---

[2]ISBE has not filed a response to the Monitor's report on CPS compliance.

[3]See Order of September 10, 2013 (Doc 916), denying CPS's motion to stay the case pending its (ultimately unsuccessful) appeal of the court's denial of CPS's motion to vacate the Consent Decree.

court and the court of appeals have rejected), any attempt by CPS to "dismiss" the case is moot.[4] As the court of appeals recently noted in its order affirming this court's denial of CPS's motion to vacate,[5] why CPS continues to expend scarce public resources attempting to relitigate moot issues is "mystifying."

Moreover, CPS's responses to the Monitor's final reports on both ISBE and CPS compliance continue to display a disrespectful, unprofessional and petulant attitude that has characterized its conduct since CPS hired outside counsel from the law firm of Shefsky & Froelich in September 2010. Prior to that time, despite sometimes heated disagreements with the plaintiffs and the Monitor (as well as the court), counsel for CPS, particularly inside counsel Kathleen Gibbons, expressed CPS's positions forcefully but professionally. After the attorneys from Shefsky & Froelich entered the case, however, the court has observed the type of disrespect and bravado by some of these lawyers that disserved their client and needlessly raised the level of contention when the case was entering its final phase.

CPS's attacks on the Monitor's competence, integrity and objectivity are misplaced, unprofessional and totally without merit. The court rejects them in the strongest terms.

---

[4]The court wishes to make clear that the court, not counsel for CPS, initiated the ultimate termination process for the ISBE and CPS Consent Decrees. Indeed, as mentioned above, the court has repeatedly rejected CPS's ill-advised attempts to achieve a finding of "substantial compliance" – attempts that prolonged the litigation at great expense to CPS and the children it is supposed to serve.

[5]Corey H v. Chicago Board of Education, ___ Fed.Appx. ___, 2013 WL 4535788, *2, 3 (7th Cir. 2013) (citing Hallett v. Morgan, 296 F.3d 732, 749 (9th Cir. 2002), ("a motion to terminate a consent decree was moot because the challenged provisions of the decree had expired.")).

As the court noted in its September 10, 2012 order (Doc. 916, at 8):

[T]he court finds that CPS's counsel's attack on the Monitor's integrity, and by implication the court's integrity, is wholly unfounded and unprofessional.  To be sure, there have been many disagreements over the years between CPS and the Monitor (as well as the court) on issues involving compliance by CPS with its obligations under its Consent Decree.  To accuse the Monitor of "lack[ing] independence," bias, and possessing a "skewed vision of [CPS's] LRE compliance" is beyond the bounds of legitimate advocacy.  The court has full faith in the Monitor's independence, neutrality and competence.  That she has disagreed with CPS on a number of occasions (she has also supported CPS on many occasions) is wholly insufficient to support the unseemly and unprofessional personal attacks lately leveled by CPS's counsel.  This relatively new tactic indicates that the flurry of motions by CPS in the last six months may be viewed more as a personal vendetta by some of the lawyers representing CPS than a legitimate effort to bring a jurisdictional matter to the attention of the court.  CPS's motives and good faith have been besmirched by this conduct, to the grave disappointment of this court.

As the Monitor points out in her "comments" to the parties' responses (Doc. 961), she has often made decisions against positions taken by plaintiffs as well as by CPS, and has struggled, with the assistance of a highly competent and dedicated staff, to perform her obligations timely and objectively.  Many of the delays about which CPS complains were caused by the limited resources of both CPS and the Monitor.  Many of the disagreements by CPS with the Monitor's final report were litigated long ago (e.g., the use of ISBE district-wide findings[6]).

Regardless of the sincerity with which CPS views its compliance with the Consent Decree and prior rulings of the court, and regardless of CPS's intentions with respect to future compliance with the requirements of the Individuals with Disabilities Education Act, its

---

[6]For some reason, CPS purports to "incorporate" its objections to various ISBE district-wide findings – objections that were soundly rejected by this court on multiple occasions.

4

disagreements with the conclusions drawn by the Monitor[7] are no excuse for <u>ad</u> <u>hominem</u> attacks on her integrity. Again, the court rejects these attacks in the strongest terms and advises counsel to avoid similar tactics in the future.

The court wishes to end this litigation with the following observation. There is no doubt that a great deal of progress has been made by CPS and ISBE as a result of <u>Corey H.</u>. More children with disabilities who require special education services are receiving those services as a result of this litigation. Teachers and staff have been given greater training and resources. CPS no longer segregates children with disabilities or educates them according to the categories of their disabilities. Individual Education Programs ("IEPs") have been improved, if not perfected. ISBE has recognized its monitoring responsibilities, and CPS's staff has developed its own self-monitoring program in an effort to comply with its obligations under the IDEA.

That much work needs yet to be done should come as no surprise to anyone, given the complexity of the issues, the increasing lack of funding, and the political and economic challenges facing public schools across the country, particularly schools in large cities like Chicago. Rather than engaging in personal attacks and stiff-necked resistance to each other, the parties who are concerned with the issues addressed by <u>Corey H.</u> should seek dialogue rather

---

[7]The court agrees with CPS that the Monitor's brief and singular reference to Dr. Coulter as an "expert" was misplaced (Dr. Coulter was an independent consultant retained in connection with the final report on ISBE compliance). Similarly, the Monitor's reference to certain statements and policies published by CPS as reported in the media or on various websites (including those of CPS and ISBE) concerning certain post-Decree matters should not be considered as part of her report on CPS's compliance with its obligations under the Consent Decree. Rather, they should be taken for precisely what the Monitor intended: suggestions for the future of CPS's challenges for educating children with disabilities in the least restrictive environment.

than discord. The scarce resources available to public schools should be spent on educating all children, those with disabilities and those without, rather than on lawyers and litigation.

**ENTER:** October 9, 2013

_____
**Robert W. Gettleman**
**United States District Judge**